# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY DAUBERT,** | 1:09-cv-1463 GSA |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| **LINDSAY UNIFIED SCHOOL DISTRICT,** | |
| Defendant. | **(Document 50)** |

## BACKGROUND

On February 23, 2011, Plaintiff, Timothy Daubert, ("Plaintiff") filed a Second Amended Complaint ("SAC") against Defendant, Lindsay Unified School District ("Defendant").[1] The SAC alleges violations of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("the Rehabilitation Act" or "RA") at the Lindsay High School Stadium ("the stadium").

On March 18, 2011, Defendant filed a Motion to Dismiss.[2]  (Doc. 50).  Plaintiff filed an opposition on April 7, 2011. (Doc. 51). Defendant filed a reply on April 22, 2011. (Doc. 54).  On

---

[1] Plaintiff initially filed a complaint on August 20, 2009.  At the time, Plaintiff was pro per. The Court dismissed the complaint with leave to amend on September 28, 2009.  (Doc. 5).  Plaintiff filed an amended complaint on October 9, 2009.  (Doc. 13).  Defendant answered on February 19, 2010.  (Doc. 13).  The parties engaged in significant settlement negotiations that resulted in dismissal of some of the causes of action.  (Docs. 30, 32, 34).  On December 22, 2010, Plaintiff subsequently obtained counsel and leave to amend the complaint was given on February 9, 2011.  (Doc. 47).

[2] The parties consented to Magistrate Judge jurisdiction and the case was re-assigned to this Court for all purposes.  (Docs. 17, 19, and 21).

May 25, 2011, the Court took the matter under submission pursuant to Local Rule 230 (g). (Doc. 56). Upon a review of all of the pleadings, the Court DENIES Defendant's motion.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6) a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), the court accepts the complaint's material allegations of fact as true, and the court construes these facts in the light most favorable to the non-moving party. Marceau v. Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). However, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a probability requirement, but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50 (internal cites and quotes omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

### SUMMARY OF PLAINTIFF'S COMPLAINT [3]

The SAC alleges the following :

Plaintiff is a resident of Lindsay, California with physical disabilities. He uses a wheelchair for mobility because he is significantly impaired in his ability to walk. (Doc. 48, ¶ 5).

Defendant is a public school district who owns and operates Lindsay High School located in Lindsay, California. (Doc. 48, ¶ 2).  One of the programs the district offers to the public is high school football games which are held at the Lindsay High School Stadium.  (Doc. 48, ¶ 5).

Plaintiff has been attempting to attend public football games since 1997. He discovered there was no accessible seating in the stadium bleachers and he was forced to sit elsewhere. (Doc. 48, ¶ 7).

---

[3] The summary is not a full recitation of all facts contained in the SAC but contains only relevant portions of Plaintiff's allegations.

On or about October 13, 1997, Plaintiff went to the Lindsay City Council meeting and complained about the stadium's lack of seating. The City Manager met with the Plaintiff after the meeting, discussed the complaint, and stated that he would talk with Defendant about the issue. (Doc. 48, ¶ 8).

Between 1997 and 2005, Plaintiff attended the Lindsay High School Stadium several times and on each occasion discovered that no accessible seating was available in the bleachers. (Doc. 48, ¶ 9).

On or about November 8, 2005, Plaintiff met with Del Corley, the maintenance supervisor for Defendant at a training session held at Lindsay City Hall. At the meeting, Karen Bobo, a representative from the Department of Justice or other federal agency dealing with civil rights, informed Mr. Corley that there must be accessible seating in the stadium. (Doc. 48, ¶ 10).

Mr. Corley advised Plaintiff on several different occasions that accessible seating would be installed before the start of the 2006 school year. (Doc. 48, ¶¶ 11-13).

Plaintiff went to the stadium on or about September 13, 2006, and discovered there was no accessible seating. (Doc. 48, ¶ 14).

On or about June 2007, a new football field and stadium was built. Plaintiff attended an open house and saw that no accessible seating was provided in the new stadium.[4] (Doc. 48, ¶ 15).

On or about October 12, 2007, Plaintiff asked Bill Ziegler, the City Planner, why the stadium did not have accessible stadium seating. He was told that Defendant would install handicap seating when it wanted to and not when Plaintiff wanted it to. (Doc. 48, ¶ 16).

On August 8, 2009, Plaintiff went to the stadium. There was still no accessible seating in the bleachers and Plaintiff missed out on another year of high school football. (Doc. 48, ¶ 17).

Defendant has demonstrated deliberate indifference to Plaintiff's rights. (Doc. 48, ¶ 18).

Plaintiff is now and has been continually deterred from attempting to participate in high

---

[4] Although Defendant alleges a new stadium was built it appears from his pleadings in response to this motion that it has not yet been determined whether the stadium was if fact rebuilt or modified.

4

school football games because of his knowledge that the stadium is inaccessible to wheelchair users. (Doc. 48, ¶ 19).

Plaintiff has alleged violations the ADA and regulations promulgated thereunder at 28 C.F.R. Part 35 *et seq,* as well as a violation of the Rehabilitation Act.  Plaintiff seeks injunctive relief to provide accessible bleacher seating or programmatic access to persons in wheelchairs, actual damages, attorney's fees and costs of the suit.

## DISCUSSION

As a preliminary matter, Defendant argues that this Court should strike paragraph eight of the complaint which alleges Plaintiff complained about the accessibility at the Lindsay High School Stadium to the Lindsay City Council and met with the City Manager to discuss the matter.  Defendant contends that Plaintiff does not allege that the City Council or the City Manager has any authority over Defendant that would make Plaintiff's communications with those officials relevant.  Thus, the paragraph is immaterial and impertinent.  Similarly, Defendant also argues that paragraph sixteen alleging that the City Planner told Plaintiff that Defendant would install handicapped seating when it wanted to and not when Plaintiff wanted it to should also be stricken based on the same argument.

Plaintiff argues that it would be premature to strike these paragraphs as Plaintiff must establish deliberate indifference to recover monetary damages under the ADA and discovery may confirm the relevance of these statements.  Specifically, Plaintiff contends that the discovery process may reveal that these individuals have a relationship with Defendant that would be material in establishing his request for damages.

The Court agrees with Plaintiff.  "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001); Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir.1998).  Given Plaintiff's request for monetary damages, striking these portions

5

of the SAC prior to discovery would be premature. Accordingly, Defendant's Motion to Strike these paragraphs is DENIED.

## Title II of the ADA and the Rehabilitation Act

Title II of the ADA and § 504 of the Rehabilitation Act "both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Similarly, section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U. S. C. § 794.

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d at 1052. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act. The Ninth Circuit has therefore observed that "[t]here is no significant difference in the analysis of the rights and obligations created by the ADA and the Rehabilitation Act." Pierce v. County of Orange, 526 F. 3d 1190, 1216 fn 27 (9th Cir. 2008). Thus, if the Court determines that the SAC alleges a cause of action under the ADA, the claim under the Rehabilitation Act will also survive.

Plaintiff contends that there are two theories that support the SAC. Both theories rely on

6

an allegation that there is no accessible seating in the bleachers at the stadium. One theory is that the football field was either new or altered after 1992, and therefore, the school district must provide accessible seats. The other theory is that even if there is no new construction, Defendant must provide accessible seating as part of its programmatic access obligations.

In the Motion to Dismiss, Defendant argues that Plaintiff's SAC improperly attempts to combine the two legal theories. In particular, Defendant contends that in order to properly state a claim under the first theory, Plaintiff must state plain facts establishing that: 1) the facility was altered; and 2) that the alterations were not done in compliance with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"). Conversely, under the second theory, Defendant argues Plaintiff must establish that: 1) the facility was in existence; 2) a governmental service, program, or activity was offered at the facility; and 3) Plaintiff is entirely denied access to the service, program, or activity. Defendant argues that Plaintiff has attempted to blend these two legal theories together, and as a result has failed to state a claim.[5]

### A.   New Construction or Alteration

Under Title II of the ADA, each facility or part of a facility that is built or altered after 1992 must be readily accessible to and useable by persons with disabilities. 28 C.F.R § 35.151 provides the following:

> **New construction and alterations.**
> (a) Design and construction.
> (1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992 ...
> (b) Alterations.
> Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with

---

[5] Defendant also challenged Plaintiff's standing based on his physical disability but subsequently withdrew this argument in its Reply.

>    disabilities, if the alteration was commenced after January 26, 1992...
>
>    (c) Accessibility standards and compliance date.
>
>    (1) If physical construction or alterations commence after July 26, 1992, but prior to September 15, 2010, then new construction or alterations subject to this section must comply with either UFAS or the 1991 Standards[6] except that the elevator exemption contained at section 4.1.3(5) and section 4.1.6(1)(k) of the 1991 standards shall not apply. Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.
>
>    28 C.F.R § 35.151.

Defendant argues that the SAC inconsistently refers to the "bleachers," "seating," and "stadium." Specifically, Defendant contends that prior to any alleged modifications to the facility, Plaintiff refers to bleachers and seating. However, after Plaintiff refers to the new construction, he only mentions the term "stadium." As such, this could mean that other parts of the facility, such as the snack bar or the restrooms were modified, rather than the seating area. Defendant contends that in order to state a claim under this theory of liability, Plaintiff must specifically identify which portion of the stadium was modified (i.e. the bleachers) and that the changes did not meet the required guidelines. Plaintiff counters that Defendant is attempting to create ambiguity where none exists and several allegations in the SAC indicate Plaintiff is contesting the stadium's seating.

A comprehensive review of the complaint reveals that Plaintiff is correct. Although Plaintiff could have been more precise when crafting this pleading, the Court is able to infer that Plaintiff is alleging post 1992 modifications were made to the seating area in the stadium. As previously stated, it is a well established principle that a complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would

---

[6] The 1991 standards refer to the ADAAG.

entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the Court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), and construe pleadings liberally in the light most favorable to the Plaintiff.  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

Here, it can be inferred that Plaintiff is contesting the seating modifications completed in the stadium, as this is the only issue raised in the pleading.  (Doc. 48 at ¶¶ 7, 9, 11, 15, 17).  Although Plaintiff does not specifically allege that the "seating in the stadium" was modified after 1992, he clearly indicates that a new stadium was built in 2007, and no accessible seating was provided in the new stadium. (Doc. 48 at ¶ 15).  Moreover, Plaintiff indicates that on August 8, 2009, (after the alleged construction) there was no accessible seating "in the bleachers." (Doc. 48 at ¶ 17).  Thus, Plaintiff's factual allegations allows the Court to draw the reasonable inference that some type of modifications were made to the stadium's seating which did not correct the access problem. This is plausibly suggestive of a claim entitling him to relief.  Moss v. United States Secret Service, 572 F. 3d at 969.  Moreover, since there has been no discovery to date, this Court (and possibly Plaintiff) has no facts before it outlining the seating arrangements at this facility such as whether it was indeed newly constructed in 2007, or what if any seating modifications were made.  Therefore, dismissal of this cause of action at this juncture is premature.  Moreover, requiring a more definite statement prior to discovery is also improper since the relevant facts have not yet been ascertained.

  B.  *Existing Facilities*

Pursuant to 28 C.F.R. § 35.150(a)(1), "a public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities." 28 C.F. R. § 35.150 (a)(1).  This mandate may be met by a variety of means, which may not necessarily include structural changes in

9

existing facilities.  For example, 28 C.F.R. § 35.150(b) (1) provides as follows :

> (b) Methods -- (1) General. A public entity may comply with the requirements of this section through such means as redesign or acquisition of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section. A public entity, in making alterations to existing buildings, shall meet the accessibility requirements of 35.151. In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate.

28 C.F.R. § 35.150(b) (1).

Defendant argues that program access means that the disabled persons are not denied access to public agency's service, programs, or activities in their entirety.  In other words, Plaintiff cannot allege that there is no access in the seating; he instead must allege facts indicating that he was denied access to the entire program (i.e. attendance at high school football games).

In opposition, Plaintiff argues that there was no accessible wheelchair seating as defined by ADAAG § 4.1.3(19)(a).  Moreover, although structural modification is not always required, in this case, the only viable option requires physical modification.  Moreover, a public entity must still devise a plan that actually works if it is going to avoid making physical changes.  In this case, Defendant has failed to do so.

In reply, Defendant argues that Plaintiff's reliance on the ADAAG is misleading because these guidelines only control in a situation where a public agency has altered an existing facility. Because Plaintiff's theory of liability relies on the fact that the stadium has not been altered, Plaintiff's citation to the ADAAG is improper.  Defendant contends that the only reference in the SAC relating to an existing facility states that Defendant failed to ensure that programs and services were fully accessible to people in wheelchairs and presented conditions that were

unlawful and discriminatory to wheelchair users.  Defendant argues this is not sufficient because it is nothing more than a conclusory statement.  (Doc. 48 at ¶ 25).

Upon review of the complaint, the Court disagrees with Defendant's interpretation of the law.  Defendant correctly argues that the ADAAG are not controlling in an existing structure case and physical modifications are not always required.  *See*, 28 C.F. R. § 35.150 (a)(1) and 28 C.F.R § 35.151(c)(1).  However, the Court is not persuaded by Defendant's argument that Plaintiff is unable to state a claim because he was able to attend the football game but had to sit somewhere other than the bleachers. As a preliminary matter, it is not clear from the SAC that after 2007, Plaintiff could attend a football game. It is true that prior to 1997, the SAC alleges Plaintiff attended the game and sat elsewhere. (Doc. 48 at ¶ 7).  However, the SAC later states in August 2009, Plaintiff went to the stadium, there was no accessible seating in the bleachers, and Plaintiff missed another year of high school football. (Doc. 48 at ¶ 17).  The SAC further alleges that Plaintiff is continually deterred from attempting to participate in high school football games because of his knowledge that the stadium is inaccessible to wheelchair users.  (Doc. 48 at ¶19).

28 C.F. R. § 35.150 (a) discusses existing facilities and requires that a public entity provide programing that is readily accessible *when viewed in its entirety*.  28 C.F. R. § 35.150 (a).  Moreover, the regulations provide that in choosing a method or alteration, the public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities *in the most integrated setting appropriate*.  28 C.F.R. § 35.150(b)(1).  These regulations suggest that a comprehensive and holistic analysis of the facts are required. Here, the Court finds that the Plaintiff's allegations regarding the lack of accessible seating in the bleachers for wheelchairs users is sufficient to state a claim under this theory of liability. Whether the facts of this case will support that claim will be determined at a later date, however, at this juncture, the Court does not have enough information to dismiss this cause of action.

Finally, as previously noted, there is not a significant difference in the analysis of the rights and obligations created by the ADA and the Rehabilitation Act.  <u>Pierce v. County of</u>

11

1  Orange, 526 F. 3d 1190, 1216 at fn 27 (9th Cir. 2008).  Since the Court has found the SAC
2  sufficiently pleads causes of action under the ADA, it similarly finds that Plaintiff has stated a
3  claim under the Rehabilitation Act

## ORDER

Accordingly, based on the above the court ORDERS that :

1. Defendant's Motion to D ismiss is DENIED;

2. This Court will hold a scheduling conference on **June 27, 2011, at 10:30** in Department 10.  The parties shall submit a joint scheduling conference report no later than June 22, 2011.  Telephonic appearances will be permitted; and

3. The parties are advised that failure to follow this Court's orders will result in the imposition of sanctions.  Furthermore, the Court is motivated to efficiently resolve this litigation since the case has been pending for a lengthy period and it appears the parties are not able to settle the matter.  In formulating dates, discovery should last no longer than three months.

IT IS SO ORDERED.

Dated:   **June 9, 2011**            /s/ **Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE

12